


# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MARK W. DOBRONSKI,**
an individual,

Plaintiff,

v.

**ROMONZO ODRELL HILL,**
an individual,

Defendant.

Case: 2:23-cv-11274
Assigned To : Leitman, Matthew F.
Referral Judge: Patti, Anthony P.
Assign. Date : 5/31/2023
Description: CMP Dobronski v. Hill (jo)

---

## COMPLAINT

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, and for his complaint against Defendant alleges:

1. This matter arises under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

## Parties

2. Plaintiff is an individual, of the age of majority, a citizen of the United States of America, has a domicile and place of business in Orange County, Florida, has a residence and place of business in Washtenaw County, Michigan, and has a

1

place of business in Wayne County, Michigan.

5. Upon information and belief, Defendant ROMONZO ODRELL HILL ("Hill") is an individual, of the age of majority, is mentally competent, is not in the military service, and resides at 8540 Homeplace Drive, Apartment 1313, Jacksonville, Duval County, Florida 32256-1929.

### Jurisdiction

6. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

7. This Court has limited personal jurisdiction over Defendant Hill, pursuant to M.C.L. § 600.705, as a result of the defendant transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; and/or contracting to insure any person, property, or risk located within this state at the time of contracting.

### Venue

8. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the tortious or illegal telephone calls complained of herein were received by Plaintff while in this judicial district.

### The Telephone Solicitation Laws

9. In response to widespread public outrage over intrusive telemarketing calls

to homes and businesses, the United States Congress acted to prevent entities, like Defendant, from invading American citizen's privacy and to prevent abusive "robocalls" by enacting the TCPA.

10. According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls."

11. Congress explicitly found that robo-calling is an invasion of privacy.

12. In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the bill, explained, "computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year. It is telephone terrorism, and it has got to stop...." See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 17 FCC Rcd. 17459, 17474, fn. 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

13. According to YourMail, Inc., a company which tracks robocall activity and

publishes the YouMail Robocall Index, during calendar year 2021 alone, American consumers were bombarded with over 50.5 *billion* robocalls; an average of over 150 robocalls to each man, woman, and child. [Source: www.robocallindex.com ].

14. In 2021, nearly 1 in 3 Americans say they have fallen victim to a phone scam in the past year, with reported losses to phone scams exceeding $29.8 Billion. [Source: www.cndb.com/2021/06/29/americans-list-billions-of-dollars-to-phone-scams-over-the-past-year.html ].

15. Congress has found that interstate telemarketing fraud has become a problem of such magnitude that the resources of the Government are not sufficient to ensure adequate consumer protection from such fraud.

16. As a result, in enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

17. The TCPA, at 47 U.S.C. § 227(b), promulgates in relevant part as follows:

"Restrictions on use of automated telephone equipment

(1) Prohibitions It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the

4

called party) using any automatic telephone dialing system or an artificial or prerecorded voice— ...

(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B)...."

18. Pursuant to authority delegated by Congress to the FCC under the TCPA at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement and carry out the TCPA.

19. The TCPA implementing regulations, at 47 C.F.R. § 64.1200, promulgate in relevant part:

"(a) No person or entity may:

(1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice; ...

(2) Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party or the prior express consent of the called party when the call is made

by or on behalf of a tax-exempt nonprofit organization, or a call that delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

(3) Initiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party, unless the call;

(i) Is made for emergency purposes;

(ii) Is not made for a commercial purpose;

(iii) Is made for a commercial purpose but does not include or introduce an advertisement or constitute telemarketing;

(iv) Is made by or on behalf of a tax-exempt nonprofit organization; or

(v) Delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103..."

20. The TCPA implementing regulations at, 47 C.F.R. § 64.1601, additionally promulgate in relevant part:

"(e) Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) **must** transmit caller identification information.

(1) For purposes of this paragraph, **caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer**. It shall not be a violation of this

paragraph to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller on behalf of which the telemarketing call is placed and the seller's customer service telephone number. **The telephone number so provided must permit any individual to make a do-not-call request during regular business hours.**

(2) Any person or entity that engages in telemarketing is prohibited from blocking the transmission of caller identification information." [Emphasis added.]

21. The TCPA, at 47 U.S.C. § 227(b)(3), provides for a private right of action, as follows:

"PRIVATE RIGHT OF ACTION. **A person or entity** may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State –

(A) an action based on a violation of this **subsection or the regulations prescribed under this subsection** to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages **for each such violation**, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." [Emphasis added.]

22. Pursuant to Congressional mandate set forth at 47 U.S.C. § 227(c)(1), the

FCC adopted regulations establishing a national "do not call" database and

prohibiting any person from making or transmitting a telephone solicitation to the

telephone number of any subscriber included in such database, which regulations are

set forth at 47 C.F.R. § 64.1200(c), and promulgate in relevant part:

> "No person or entity shall initiate any telephone solicitation to:...
>
> "(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government...."

23. Additionally, the TCPA, at 47 U.S.C. § 227(c)(5), provides for a private

right of action, as follows:

> "Private right of action. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in **violation of the regulations prescribed under this subsection** may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—
>
> (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages **for each such violation**, whichever is greater, or
>
> (C) both such actions.
>
> It shall be an affirmative defense in any action brought

under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

24.     The Florida Legislature also has promulgated regulations restricting telephone solicitations. The FTSA, at Fla. Stat. § 501.059, promulgates in relevant part as follows:

"... (2) Any telephone solicitor who makes an unsolicited telephonic sales call to a residential, mobile, or telephonic paging device telephone number shall identify himself or herself by his or her true first and last names and the business on whose behalf he or she is soliciting immediately upon making contact by telephone with the person who is the object of the telephone solicitation...

(8)(a) A person may not make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party.

(b) It shall be unlawful for any person who makes a telephonic sales call or causes a telephonic sales call to be made to fail to transmit or cause not to be transmitted the originating telephone number and, when made available by the telephone solicitor's carrier, the name of the telephone solicitor to any caller identification service in use by a

recipient of a telephonic sales call. However, it is not a violation to substitute, for the name and telephone number used in or billed for making the call, the name of the seller on behalf of which a telephonic sales call is placed and the seller's customer service telephone number, which is answered during regular business hours. If a telephone number is made available through a caller identification service as a result of a telephonic sales call, the solicitor must ensure that telephone number is capable of receiving telephone calls and must connect the original call recipient, upon calling such number, to the telephone solicitor or to the seller on behalf of which a telephonic sales call was placed. For purposes of this section, the term "caller identification service" means a service that allows a telephone subscriber to have the telephone number and, where available, the name of the calling party transmitted contemporaneously with the telephone call and displayed on a device in or connected to the subscriber's telephone...

(10)(a) A called party who is aggrieved by a violation of this section may bring an action to:

1. Enjoin such violation.

2. Recover actual damages or $500, whichever is greater.

(b) If the court finds that the defendant willfully or knowingly violated this section or rules adopted pursuant to this section, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under paragraph (a)...."

26. Plaintiff's residential and cellular telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even

10

financial miracles from God. Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, claiming that arrest warrants have been issued against Plaintiff for alleged drug trafficking and money laundering activities.

27. This lawsuit is about the annoying "This is Susan... a Medicare health care advisor" recorded message "robocalls" which have been flooding Plaintiff's residential telephone line.

28. Plaintiff's residential telephone number is ***-***-0222.

29. Plaintiff's residential telephone numbers ***-***-0222 is listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and have been so listed continuously since at least August 24, 2022 and at all times subsequent thereto.

30. By listing his residential telephone number on the National Do Not Call Registry, Plaintiff has given constructive notice to the world, including each and every one of the Defendants, that Plaintiff does not wish to receive telephone solicitations or robocalls at his residential telephone number.

31. The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the

call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at *26 ¶ 73 (FCC July 10, 2015) [Emphasis added].

32. Plaintiff is the subscriber and a customary user of the called telephone line, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same. Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's robocall provisions. See *Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316, 324 (C.A.3, 2015).

33. At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendant.

34. At no time has Plaintiff provided permission to the Defendant to engage in telephone solicitation with the Plaintiff via telephone.

35. Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

36. Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

37. At no time has Plaintiff provided "prior express consent" or "prior express written consent" (as those terms are defined under the TCPA and as interpreted by the FCC) the Defendant or anyone acting on behalf of the Defendant to initiate any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to Plaintiff's residential telephone number.

38. At no time has Plaintiff had an "established business relationship" (as that term is defined under the TCPA and as interpreted by the FCC) with the Defendant.

39. The FCC has declared that purporting to receive consent during a call does not constitute the *prior* consent necessary to deliver the message in the first place, as the request is part of the telemarketing. See *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14019, 2003 WL 21517853, at *49, ¶ 142 (June 26, 2003).

40. The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

13

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 20 FCC Rcd 13664, 13667, ¶ 7 (2005).

41. When considering individual corporate officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason,* No. 10-10010, 2013 U.S. Dist. LEXIS 155985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participating in or personally authorized the conduct found to have violated the statute.") (internal citation omitted); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D.MD. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

42. It is well settled under Michigan law that corporate employees and officials are personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation. A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent for the corporation and not on his own behalf.

43. For each and every call alleged herein initiated to Plaintiff's telephone line,

Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

44. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendant's calls.

45. For each and every call alleged herein initiated to Plaintiff's telephone line, Defendants caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

46. Each and every call placed without consent by Defendants alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

47. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A

violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

## **Allegations Specific to this Complaint**

48. Defendant Hill is a licensed insurance salesperson.

49. As part of Hill's business model, Hill relies upon third-party telemarketers to initiate telephone calls to consumers to identify consumers who meet pre-qualification criteria set by Hill and to live transfer those consumers to Hill to make a insurance sales presentation and close the sale.

50. The third-party telemarketers, acting as agents for Hill, utilize automatic telephone dialing systems, which can initiate telephone calls to consumers *en masse*, which automatic system dials hundreds of telephone numbers each hour, delivers a pre-recorded audio message to the consumer, and makes basic pre-qualifying questions (i.e., age, and whether the consumer has Medicare A/B coverage) to the consumer.

51. Where the consumer responds in a manner which meets the pre-qualifying criteria, the consumer is then transferred to a live telemarketer who verifies the information, obtains the consumer's name and other personal identifying information and, assuming the consumer continues to meet pre-qualifying criteria, the call is then live transferred to Hill to continue with the insurance sales presentation.

52.  Because the Defendant and Defendant's agents that they are violating the TCPA and similar state consumer protection laws, the Defendant and Defendant's agent engage in a concert of action, utilizing various deceptive practices, to conceal their identities.

53.  Plaintiff has had to engage in various investigative techniques to identify the sources of the telemarketing calls being received.

54.  One investigative technique utilized by Plaintiff is termed a "canary trap", wherein Plaintiff provides false, but unique, identifying information during each received call, in particular a unique name.  If and when that unique information surfaces at a later date, a tie-in between the two events, and hence the ability to identify the source call, is able to be made.

55.  The identity of the third-party telemarketer(s) utilized by Defendant is unknown to Plaintiff, but well known to Defendant.  As discovery progresses in this case and Plaintiff is able to learn the identity or identity of the third-party telemarketer(s) that Defendant has utilized to initiate the telephone solicitations, Plaintiff will seek to amend this complaint to add the third-party telemarketer(s) as additional named defendant(s).

56.  Also as discovery progresses in this case, Plaintiff anticipates learning of additional telephone solicitation calls for which Defendant or Defendant's agents are

responsible, at which time Plaintiff will seek to amend this complaint to supplement the damages claims.

The Calls

57. On each of the following dates and times, Defendant or Defendant's third-party telemarketer initiated a telephone call to Plaintiff's residential telephone line ***-***-0222:

| Call | Date | Time | Caller Identification Number |
|------|------|------|------------------------------|
| 1 | 04/01/2023 | 15:13 | 407-770-0260 |
| 2 | 04/01/2023 | 15:38 | 407-770-0462 |
| 3 | 04/01/2023 | 16:14 | 407-770-0373 |
| 4 | 04/03/2023 | 10:56 | 407-770-0426 |
| 5 | 04/03/2023 | 11:46 | 407-770-0864 |
| 6 | 04/19/2023 | 17:02 | 407-770-0510 |
| 7 | 05/22/2023 | 17:58 | 407-777-9650 |

58. Upon Plaintiff answering each of Calls 1 through 7, Plaintiff observed that there was a 5-6 delay from the time that Plaintiff said "hello" at which point a pre-recorded voice message would begin to play stating:

> "Hello, This is Susan. I'm a Medicare health care advisor on a recorded line. Can you hear me OK? [Delay.]
>
> Well, I am with one of the providers from Medicare Health Center, and based on our records I show that you may qualify for ways to reduce or even eliminate the costs for common health care expenses. I have a few questions to go over with you. OK? [Delay.]
>
> Do you currently have Medicare Part A and Part B active right now? [Delay.]

Perfect! Only if you don't mind me asking, can you please confirm how old are you? [Delay]

Good! OK what I am going to do now is bring one of our specialists on the line. You may hear some phone set up prompts while I'm bring them on the line, but remain on the line. OK?"

59. During each call, in order to better identify the caller, Plaintiff responded to the recorded message prompts, stating his age as 67 and having Medicare A and Medicare B coverage.

60. During Call 1, Plaintiff was then transferred to a live telemarketer who asked for Plaintiff's name and date of birth, then suddenly hung up.

61. During Calls 2, 3, 4, 5 and 6, after receiving the recorded message, the call would remain on hold for a brief period and then suddenly terminate.

62. After each call, Plaintiff would dial back the caller identification number displayed, and on each occasion would receive a recorded message that the telephone number is not in service.

<u>Call 7</u>

63. During Call 7, Plaintiff responded to the recorded message prompts that he was 67 years old and had Medicare A and B coverage.

64. The call was then transferred to a live telemarketer who only identified himself as Steven.

65. Steven then sought personal identifying information from Plaintiff, including the "full name appearing on the Medicare card", to which Plaintiff provided a "canary trap" name of Thomas J. Wheeler.

66. Steven then live transferred the call to another individual who identified himself as "Romonzo Hill... I am a licensed agent in the State of Florida."

67. Hill was asking qualifying questions of Plaintiff, then asked for Plaintiff to provide his Medicare number.

68. Plaintiff inquired of Hill as to what insurance company he worked for. Hill suddenly hung up.

### Follow-up Interview

69. Plaintiff was able to ascertain that Hill was, in fact, an insurance agent licensed in the State of Florida, and from Hill's license information, found a telephone number for Hill.

70. On May 22, 2023, at 6:29 P.M., Plaintiff initiated a telephone call to Hill and engaged in an investigative technique termed a "confrontation interview."

71. Hill acknowledged that Plaintiff and Hill had just spoke and stated that his dialer got disconnected and that he was trying to call Plaintiff back on the telephone.

72. Plaintiff inquired of Hill who is behind all of the telephone solicitation calls, to which Hill responded that the third-party telemarketer was a "private

contractor."

73. Hill then inquired whether the third-party telemarketer had provided Plaintiff with Hill's telephone number.

74. Plaintiff inquired as to the identify of the third-party telemarketer, at which point Hill's demeanor changed substantially.

75. Plaintiff asked if Hill had a written do not call policy, to which Hill laughed and feigned that he did not know what that was.

76. Hill then began to engage in a gaslight technique to avoid answering any questions, claiming that he does not recall speaking with me, and does not recall speaking with "Thomas Wheeler" 28 minutes earlier, and had no idea what I was talking about relative to someone transferring a call to him.

## COUNT I
## VIOLATION OF THE TCPA - AUTODIALER CALL

77. Plaintiff incorporates the allegations of paragraphs 1 through 76, *supra.*

78. Each of Calls 1 through 7 were in violation of the TCPA and its implementing regulations, specifically 47 U.S.C. § 227(b)(1)(B)(iii) and 47 C.F.R. § 64.1200(a)(3), as Defendant or Defendant's agent initiated a telephone call to Plaintiff's residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party and there being no emergency.

79.  The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the failure to include any identifying information and the repeated number of calls.

### COUNT II
### VIOLATION OF THE TCPA - ABANDONED CALL

80.  Plaintiff incorporates the allegations of paragraphs 1 through 76, *supra.*

81.  Each of Calls 1 through 7 were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(7)(i), as the call was not connected to a live sales representative within two (2) seconds of the called person's completed greeting and the required identification and opt-out processes were not followed.

82.  The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repeated number of calls.

### COUNT III
### VIOLATION OF THE TCPA - DO NOT CALL

83.  Plaintiff incorporates the allegations of paragraphs 1 through 76, *supra.*

84.  Each of Calls 1 through 7,  were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(c)(2), as Defendants or Defendants' agent initiated a telephone solicitation to a residential telephone subscriber who has registered his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal

Government.

85. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repeated number of calls.

## COUNT IV
## VIOLATION OF THE TCPA - FALSE IDENTITY

86. Plaintiff incorporates the allegations of paragraphs 1 through 76, *supra*.

87. Each of Calls 1 through 7 were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(3), as Defendant or Defendant's agent entity making the call for telemarketing purposes did provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.

88. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repeated number of calls.

## COUNT V
## VIOLATION OF THE TCPA - FALSIFIED CALLER ID

89. Plaintiff incorporates the allegations of paragraphs 1 through 76, *supra*.

90. Each of the Call Numbers 1 through 7 were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1601(e)(1), as Defendants and/or Defendants' agents failed to provide caller identification information

23

displaying a telephone number which would permit any individual to make a do-not-call request during regular business hours.

91. The Defendants had to take deliberate and overt action to manipulate the telephone network equipment to provide false caller identification information, therefore the aforesaid violations of the TCPA were willful and/or knowing.

## COUNT VI
## VIOLATION OF THE FTSA

92. Plaintiff incorporates the allegations of paragraphs 1 through 76, *supra.*

93. Each of Calls 1 through 7 were in violation of the FTSA: specifically Fla. Stat. § 501.059(2), as Defendants or Defendants' agent made an unsolicited telephonic sales call to a residential telephone number and did not identify himself by his or her true first and last names and the business immediately upon making contact by telephone with the person who is the object of the telephone solicitation; and/or Fla. Stat. § 501.059(8)(a), Defendants or Defendants' agent made and allowed a telephonic sales call to be made involving the playing of a recorded message without the prior express written consent of the called party; and/or Fla. Stat. § 501.059(b), Defendants or Defendants' agent caused a telephonic sales call to be made to fail to transmit the originating telephone number and the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call.

94. The aforesaid violations of the FTSA were willful and/or knowing as is evidenced by the repeated number of calls and the deliberate and over actions taken by Defendant and/or Defendant's agents.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendant, as follows:

A.   Damages:

    i.   Damages for violations of the TCPA alleged:

| Count | Violations |
|-------|------------|
| I     | 7          |
| II    | 7          |
| III   | 7          |
| IV    | 7          |
| V     | 7          |

A total of 35 violations at $500 per violation for damages of $17,500.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $52,500.00.

    ii.   Damages for violations of the FTSA alleged at Count VI: 7 violations at $500 per violation, for damages of $3,500.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $24,500.00.

The cumulative total amount of damages claimed in this action is

$77,000.00,and in the event of default judgment is the sum certain damages amount that will be sought.

B.      An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

C.      An injunction enjoining Defendant and Defendant's agents from initiating any telephone calls to Plaintiff's residential telephone and cellular telephone lines.

D.      Interest accruing from the date of filing until paid at the statutory rate; and,

E.      Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: May 25, 2023

_____

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 330-9671
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

**MARK W. DOBRONSKI**
POST OFFICE BOX 85547
WESTLAND, MICHIGAN 48185-0547
(734) 330-9671
markdobronski@yahoo.com

May 25, 2023

United States District Court
Attn: Clerk's Office
231 West Lafayette Boulevard, 5th Floor
Detroit, Michigan 48226-2700

   Re: NEW FILING
     Mark W. Dobronski v. Romonzo Odrell Hill

Dear Sir or Madam:

  Enclosed please find:

- Check number 5243, in the amount of $402.00, representing the filing fee required for the above-case;

- Civil Cover Sheet

- Complaint; and,

- Summons

  Please file the complaint in your usual course and return the signed Summons to the attention of the undersigned.

  Thank you for your attention to this matter.

         Very truly yours,


         Mark W. Dobronski

MWD/hp

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

County in which action arose: WASHTENAW, MI

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MARK W. DOBRONSKI

**DEFENDANTS**

ROMONZO ODRELL HILL

**(b)** County of Residence of First Listed Plaintiff   ORANGE, FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   DUVAL, FL
(IN U.S. PLAINTIFF CASES ONLY)
THE LOCATION OF

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

PRO SE

Case: 2:23-cv-11274
Assigned To : Leitman, Matthew F.
Referral Judge: Patti, Anthony P.
Assign. Date : 5/31/2023
Description: CMP Dobronski v. Hill (jo)

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [X] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' | Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [X] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 U.S.C. 227

Brief description of cause:
ILLEGAL TELEMARKETING CALLS

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 77,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions:)*   JUDGE _____   DOCKET NUMBER _____

DATE
May 25, 2023

SIGNATURE OF ATTORNEY OF RECORD
*Mark W. Dobronski*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.          Is this a case that has been previously dismissed?                    ☐ Yes
                                                                                  ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.          Other than stated above, are there any pending or previously         ☐ Yes
            discontinued or dismissed companion cases in this or any other        ☑ No
            court, including state court? (Companion cases are matters in which
            it appears substantially similar evidence will be offered or the same
            or related parties are present and the cases arise out of the same
            transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :



UNITED STATES
POSTAL SERVICE ®

| PRIORITY
MAIL

U.S. MARSHALS

FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

TRACKED ■ INSURED



PS00001000014

EP14F July 2022
OD: 12 1/2 x 9 1/2

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

For Domestic shipments, the maximum weight is 70 lbs. For international shipments, the maximum weight is 20 lbs.